| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:14-CR-67-1 |
| | § | |
| DAVID CHARLES JENKINS | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant David Charles Jenkins's ("Jenkins") *Pro Se* Motion for Early Termination of Supervised Release (#251), wherein Jenkins seeks early termination of his three-year term of supervised release. After conducting an investigation, Jenkins's United States Probation and Pretrial Services ("Probation") Officer in the Eastern District of Texas prepared a report for the court's consideration and is opposed to his motion. The Government is also opposed. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Jenkins's motion should be denied.

I.  Background

Jenkins has served three prior terms of imprisonment stemming from federal court cases in Texas and Louisiana. On January 11, 2002, Jenkins pleaded guilty to Conspiracy to Distribute More Than 50 Grams of Cocaine Base and Marijuana in the Eastern District of Texas, Case No. 1:01-CR-30-2. On April 18, 2002, he was sentenced to 151 months' imprisonment, followed by a 5-year term of supervised release. On May 28, 2008, the court granted Jenkins's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) and reduced his sentence of imprisonment from 151 months to 121 months. On May 7, 2010, Jenkins was released from imprisonment and began his 5-year term of supervised release. While on supervised release in Case No. 1:01-CR-

30-2, Jenkins was convicted of Conspiracy to Possess With Intent to Distribute Cocaine Base and Possession with Intent to Distribute Cocaine Base following a jury trial in the Western District of Louisiana, Case No. 6:10-CR-279-2. On November 28, 2011, Jenkins was sentenced to 151 months' imprisonment for each count, to run concurrently, followed by a total of 8 years' supervised release. Shortly thereafter, on January 5, 2012, Jenkins's supervised release was revoked for violating a mandatory condition of his supervision in Case No. 1:01-CR-30-1, and he was sentenced to 24 months' imprisonment, to run consecutively to his sentence in Case No. 6:10-CR-279-2, but he was allowed to self-surrender on December 5, 2012, due to medical reasons. On September 18, 2014, Jenkins pleaded guilty to Production of Counterfeit Access Devices in the Eastern District of Texas, Case No. 1:14-CR-67-1 (the case at bar). On March 31, 2015, he was sentenced to 24 months' imprisonment for that offense, followed by a 3-year term of supervised release, to be served concurrently with the terms of supervised release imposed in the Eastern District of Texas, Case No. 1:01-CR-30-2, and the Western District of Louisiana, Case No. 6:10-CR-279-2. On February 9, 2018, the court in the Western District of Louisiana granted Jenkins's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2), and reduced his sentence of imprisonment from 151 months to 121 months in Case No. 6:10-CR-279-2.

Jenkins was released from imprisonment on June 28, 2021, under the CARES Act in response to the COVID-19 pandemic and was placed on home confinement. On April 26, 2022, former President Biden issued an executive grant of clemency and commuted Jenkins's sentence of confinement with a new expiration date of April 26, 2023, leaving intact and in effect the term of supervised release. On April 26, 2023, Jenkins completed his imprisonment term and began supervision in the current case in the Southern District of Texas, Houston Division. His

supervision term is set to expire on April 25, 2026. At the time of his release, Jenkins also began serving a concurrent 8-year term of supervision in Case No. 6:10-CR-279-2. On July 11, 2025, the court in the Western District of Louisiana case granted Jenkins's *pro se* motion for early termination of supervised release in that case, which was effective on July 15, 2025.

In his motion, Jenkins, age 50, asks the court to terminate his supervision at this time, having served more than two years of his three-year term of supervised release. He asserts that since his release from confinement, he has worked diligently to rebuild his life, maintain stability, and become a productive member of society. Jenkins claims that he has not incurred a single violation, arrest, or negative incident. He further avers that he has complied with every condition of supervision, remained drug-free, and has lived a stable, law-abiding life. Jenkins adds that he has reconnected with his family, engaged in employment, maintained a stable residence, and dedicated himself to being a positive presence in his community.

II.  Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain of the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United*

---

[1] These factors include: the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

*States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes." 309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected,

and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*,

No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *United States v. Baptiste*, No. 98-207, 2025 WL 871520, at *1 (E.D. La. Mar. 20, 2025) (noting that early termination is generally warranted "only in cases where the defendant shows changed

circumstances, such as exceptionally good behavior" (quoting *United States v. Jones*, No. V-11-21, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013)); *Smith*, 2014 WL 68796, at *1.

According to Jenkins's Presentence Investigation Report ("PSR"), prepared on January 30, 2015, his offense of conviction entails the production of counterfeit access devices. On May 17, 2013, the Jefferson County Sheriff's Office was contacted by an employee of Avis Car Rental, located at the Jack Brooks Regional Airport, regarding a blue bag that was found in a rental car. The bag contained a laptop computer, a thumb drive, a magnetic strip reader/writer, and a three-ring binder labeled "Bible" with the name "Dylan Jenkins" typed on it. The binder contained the following items, among other things: copies of 40 drivers licenses and identification cards; a total of 13 automated teller machine ("ATM") receipts, including 3 from a Wells Fargo Bank located in Beaumont, Texas, and 10 from various Capital One Bank locations in Beaumont and in Sulphur, Louisiana; one deposit receipt from Education First Federal Credit Union in Beaumont; printed emails dated August 11, 2012, and August 13, 2012,[2] between David Jenkins and Max Payne, containing numerous pages of international banking information and access device numbers printed on the documents; and several additional pages containing access device numbers.

Seventy-four counterfeit credit cards were recovered in which the account numbers on the front of the cards did not match the numbers magnetically encoded on the strip on the back of the cards. Twenty cards had been activated with balances ranging from $737.14 to $10,753.61, totaling $84,558.51. Fifty-three cards had either not been activated or had been activated with balances less than $500. Jenkins was held responsible for a total intended loss of $111,058.51.

---

[2] These dates are during the time frame in which Jenkins was allowed to delay his self-surrender until December 5, 2012, to serve a sentence for a prior violation of supervised release.

Twenty-seven cards had been used to cause actual losses totaling $29,010.51. The losses included the following: Allegacy Federal Credit Union ($2,416.00); Chase Bank ($296.00); First Citizens Bank and Trust ($10,990.79); Navy Federal Credit Union ($10,247.31); and Synovus Bank ($4,960.41). Further investigation revealed that Jenkins manufactured the counterfeit cards with the intent to defraud. Jenkins, his wife, and other unidentified defendants used the cards at various locations, including Alter's Gem Jewelers in Beaumont and at various ATM machines.

Jenkins's PSR lists prior convictions for conspiracy to distribute more than 50 grams of cocaine base and marijuana, conspiracy to possess with intent to distribute cocaine base, and possession with intent to distribute cocaine base. He failed to comply with a previous term of supervised release, and it was revoked. He also had prior arrests for possession of a controlled substance and possession of marijuana. In addition, Jenkins has a long history of substance abuse starting at age 14, which includes the frequent use of marijuana and cocaine.

In this situation, the court finds that Jenkins's post-release conduct does not warrant early termination of his supervised release. Although Jenkins appears to have complied with his conditions of release to date, his allegations are rather sweeping and vague. He does not reveal the nature of his job, where he is employed, where he lives, with whom he lives, who he supports, or how he is "a positive presence in his community." He identifies no new or exceptional circumstances or needs that would merit early release from supervision. He fails to explain how the conditions of his supervised release limit his employment opportunities, interfere with his family responsibilities, or otherwise impact his daily life in a significant manner. Jenkins also does not clarify how being on supervised release keeps him from furthering his career, achieving additional goals, assisting his family, or engaging in sports, religious, or volunteer activities.

Under the circumstances, the court finds the current conditions of Jenkins's supervised release are not onerous and remain appropriate in view of his offense of conviction involving his production of counterfeit access devices, his prior federal drug convictions, his failure to comply with a previous term of supervised release, and his history of substance abuse.

At this time, Jenkins has served more than two-thirds of his three-year term of supervised release. While Jenkins's achievements to date should be commended, continuing him on supervision will provide him the best opportunity for success in reentry in view of his prior commission of crimes involving the possession and distribution of drugs and the manufacture of counterfeit access devices causing actual losses to the victims. Requiring Jenkins to complete his entire, three-year term of supervised release safeguards against the reoccurrence of criminal activity and drug use, while imposing only a minimal burden on Jenkins. Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. Jenkins does not identify any such circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions of release imposed by the court. Thus, although Jenkins appears to be on the right path, the court believes that completion of his full term of supervised release appropriately reflects the seriousness of his offense of conviction, deters future criminal conduct, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4.

In his report, Jenkins's probation officer concludes:

> Though he is to be commended for his success thus far, . . . , it is the recommendation of the U.S. Probation Office, in the Eastern District of Texas, that the Court deny this motion in order for Mr. Jenkins to complete his 3-year term of supervised release as originally ordered, to expire on April 25, 2026. Mr. Jenkins

has a history of committing new federal crimes while under supervision and that history suggests an increased risk for recidivism. The presentence report indicates his federal crimes in Louisiana were committed in 2010, while he was on supervised release for a previous federal offense, namely Conspiracy to Distribute more than 50 Grams of Cocaine Base and Marijuana, in U.S. District Court, Eastern District of Texas, Case. No. 1:01cr30-2. In addition, Paragraph 28 of the presentence report indicates his supervised release in Case No. 1:01cr30-2 was revoked on January 5, 2012, but he was allowed to self-surrender on December 5, 2012, due to medical reasons. However, the offense conduct in Paragraph 5 of the presentence report also suggests that some of the criminal activity in this case was committed within that time frame in 2012, prior to his self-surrender date. It is believed that continuing Mr. Jenkins on supervision until his full expiration date would be in the best interest of the community.

The court concurs with the position and recommendation of the Probation Office in the Eastern District of Texas and finds that the early termination of Jenkins's three-year term of supervised release would not be in the interest of justice.

III.   Conclusion

In accordance with the foregoing, Jenkins's *Pro Se* Motion for Early Termination of Supervised Release (#251) is DENIED.

SIGNED at Beaumont, Texas, this 8th day of September, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE